UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/5/13

------------------------------------------------------------X

STANLEY HILBERT,

                    Plaintiff,

    -against-

BRIAN FISCHER, *et al.*,

                  Defendants.

**OPINION AND ORDER**

12 Civ. 3843 (ER)

------------------------------------------------------------X

EDGARDO RAMOS, United States District Judge:

      Plaintiff Stanley Hilbert ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42

U.S.C. § 1983, the Americans With Disabilities Act and the Rehabilitation Act against Brian

Fischer, Commissioner of the New York State Department of Corrections and Community

Supervision ("DOCCS"); Green Haven Correctional Facility ("Green Haven") Superintendent

William Lee; and various Green Haven "contractors and employees" (collectively, the

"Defendants").[1]  Presently before the Court is Defendants' motion to partially dismiss Plaintiff's

Amended Complaint.[2]  Doc. 65.  Specifically, Defendants seek dismissal of Plaintiff's claim of

deliberate medical indifference for failure to exhaust administrative remedies.  Defendants

Fischer and Lee move in the alternative to dismiss Plaintiff's deliberate indifference claim

because Plaintiff has failed to demonstrate that they were personally involved in the alleged

Constitutional violation.  For the reasons discussed below, Defendants' motion for partial

dismissal of the Amended Complaint is GRANTED.

---

[1] On June 5, 2012, the Court dismissed DOCCS as a Defendant in this action.  Doc. 6.

[2] Plaintiff filed a Notice of Motion along with his opposition papers for an "Order pursuant to Rule 7(b) of the Federal Rule[s] of Civil Procedure granting a trial concerning the complaint." Doc. 77.  As the motion is procedurally improper, the Court assumes that Plaintiff filed the Notice of Motion in further support of his opposition to Defendants' motion to dismiss, and will consider it accordingly.

## I.   Factual Background

The Court accepts the factual allegations in the Amended Complaint as true for purposes of Defendants' motion. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010).

In September 2011, Plaintiff was incarcerated at Marcy Correctional Facility's ("Marcy") Residential Mental Health Unit ("RMHU").  Amended Complaint ("Am. Compl.") ¶ 42. Plaintiff sought mental health treatment at that facility; however, due to the unavailability of observational cells, he was transferred to Green Haven.[3]  *Id.* ¶¶ 42-43.  On September 27, 2011, at approximately 10:40 am, while still at Green Haven, Plaintiff complained of chest pains and was escorted to the facility infirmary. *Id.* ¶ 45.  After Plaintiff had been examined, Defendants Kowalchuk, Rodriguez and Surprenant escorted him back to his cell.  *Id.* ¶ 47.  On the way back to the cell, Surprenant told Plaintiff that he was "full of shit," that he was "bullshitting and wasting his time," and that "this ain't Marcy [and] we have another way to treat mental illness and you're going to find out soon enough." *Id.* ¶¶ 48-50.  Upon hearing this, Plaintiff requested that Surprenant allow him to see a mental health therapist. *Id.* ¶ 51.  Defendant Rodriguez then interjected and said that "we got some therapy for you" and that "your [sic] going to need a physical therapist to teach you how to walk again." *Id.* ¶ 52.

Upon returning to his cell, Plaintiff was ordered to face the wall, which he did.  *Id.* ¶ 53. Surprenant then instructed Plaintiff, who was still in restraints, to turn around and face him.  *Id.* ¶ 54.  After Plaintiff complied, Surprenant "got nose to nose" with him and stated, "you played games and wasted my time.  I told you we have another way to treat mental illness." *Id.* ¶ 55.  At that point, Rodriguez "[s]uddenly" punched Plaintiff in the left eye. *Id.* ¶ 56.  Defendants

---

[3] The exact date on which Plaintiff was transferred to Green Haven is not clear from the face of the Amended Complaint.

Kowalchuk, Rodriguez and Surprenant then began beating Plaintiff "mercilessly with their hands and feet," and "punched and kicked [him] repeatedly about the body, face and head." *Id.* ¶¶ 57-58. Plaintiff alleges that upon information and belief, Defendant Rodriguez then "stepped on [his] lower back while Defendants Surprenant, Tillotson, Kowalchuk, Keran [sic], and Brothers held [him] down and removed the restraints." *Id.* ¶ 59. Defendants then left the cell and locked it behind them. *Id.* ¶ 61.

Plaintiff alleges that he then informed Defendant Kowalchuk that he was in "excruciating pain and need[ed] medical attention," *id.* ¶ 60; however, Kowalchuk refused Plaintiff's request. *Id.* ¶ 62. Approximately one hour later, Defendant Miller, a nurse, arrived at Plaintiff's cell with a corrections officer to take photographs. *Id.* ¶ 63. At that point, Plaintiff's nose was bleeding profusely, he was bleeding out of his left eye, and he could barely stand up. *Id.* ¶ 64. Plaintiff informed Miller that he was in excruciating pain, but she did not "even [perform] a cursory examination . . . [and] told Plaintiff that there was nothing wrong." *Id.* ¶¶ 64-65. Plaintiff alleges that Miller told him to "stop whining" and that crying is what babies do. *Id.* ¶ 66. She then exited the cell with the corrections officer. *Id.* ¶ 67.

Over the next two days, from September 27 to 29, 2011, Plaintiff alleges that he requested medical assistance for his injuries from Defendants Morlas, Patil, Panuto, Zwillinger, O'Conner, Brandow, Hannd, Sposato, Santoro, Edwards, Kutz, Kowalchuk, Lamay, and Gotsch, and that these Defendants all denied his requests. *Id.* ¶¶ 68-81. On the morning of September 29, 2011, a doctor came to Plaintiff's cell and, after examining him, determined that he was seriously injured and in need of immediate medical attention. *Id.* ¶ 82. Plaintiff was then transferred to an outside hospital, Westchester County Medical Center, where he was treated and later released. *Id.* ¶ 83. Plaintiff claims that he suffers from frequent migraines, "extreme

debilitating back pain," loss of vision and a broken nose. *Id.* ¶ 84.

## II.   Plaintiff has not Exhausted Administrative Remedies with Respect to his Eighth Amendment Deliberate Medical Indifference Claim

Plaintiff claims that Defendants violated his Eighth Amendment rights by using unnecessary and excessive force against him and by acting with "deliberate indifference or reckless disregard toward [his] serious medical needs by failing to take the steps necessary to ensure that [he] received treatment for his injuries." Am. Compl. ¶ 87.  Defendants argue that Plaintiff's deliberate medical indifference claim should be dismissed because he failed to exhaust the administrative remedies available under DOCCS' three-tiered Inmate Grievance Program ("IGP").  Specifically, Defendants argue that Plaintiff's grievance only alleged that he was assaulted by several officers at Green Haven, and did not include any allegations that Defendants were deliberately indifferent to his medical needs.

### a.   Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citations omitted).  The PLRA's exhaustion requirement is "mandatory," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), and "'applies to all inmate suits about prison life.'" *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (quoting *Porter*, 534 U.S. at 532).  The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2007)) (internal quotation marks omitted).  That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* (quoting *Jones*, 549 U.S. at 218).

4

In New York, prisoners must exhaust each level of the three-tiered IGP.  *Kasiem v. Switz*, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010).  Under the IGP, an inmate must:  (i) file a complaint with the grievance clerk; (ii) appeal an adverse decision by the Inmate Grievance Resolution Committee ("IGRC") to the superintendent of the facility; and (iii) appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC").  N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5.  The IGP regulations provide that an inmate must submit a complaint on an inmate grievance complaint form, or on plain paper if the form is not readily available.  7 NYCRR § 701.5(a)(1).  The regulations further require that "the grievance . . . contain a concise, specific description of the problem and the action requested."  7 NYCRR § 701.5(a)(2).

Although failure to exhaust is "an absolute bar to an inmate's action in federal court," *George v. Morrison-Warden*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *2 (S.D.N.Y. June 11, 2007), the Second Circuit has recognized three grounds for exceptions to the exhaustion requirement.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).  First, a court must ask "whether administrative remedies were in fact 'available' to the prisoner." *Id.* (citation omitted).  Second, a court must determine whether the defendant forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendant's own actions estop him from raising the affirmative defense of non-exhaustion.  *Id.*  Finally, if the court finds that administrative remedies were available to the plaintiff, and that the defendant is not estopped and has not forfeited his non-exhaustion defense, a court should consider whether any "'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'"  *Id.* (quoting *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).

**b.  The Court May Consider Extrinsic Material Because Plaintiff was on Notice that Defendants' Motion to Dismiss Might be Converted to One for Summary Judgment and had the Opportunity to Submit Evidence Relevant to the Issue of Exhaustion**

Defendants move to dismiss Plaintiff's deliberate indifference claim pursuant to Fed. R. Civ. P. 12(b)(6).  Along with their moving papers, Defendants submit the declaration of Jeffery Hale, as well as a copy of the grievance Plaintiff filed at Marcy, numbered MCY-15928-12.  *See* Doc. 68.  On a Rule 12(b)(6) motion, a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.  *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007).  Accordingly, courts in this district have held that where non-exhaustion is clear from the face of a complaint, a court should dismiss the complaint under Rule 12(b)(6).  *See Mateo v. Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865, at *3 (S.D.N.Y. July 16, 2013) (citing *Kasiem*, 756 F. Supp. 2d at 575; *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).  However, where non-exhaustion is not clear from the face of the complaint, courts should convert a Rule 12(b) motion into a Rule 56 motion for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about . . . whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."  *Id.* (quoting *McCoy*, 255 F. Supp. 2d at 251).  Before converting a Rule 12(b)(6) motion into a Rule 56 motion, courts must notify the parties and "afford [them] the opportunity to present supporting material."  *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).  Such notice and opportunity are "especially important when a plaintiff is *pro se*."  *Id.* (quoting *McCoy*, 255 F. Supp. 2d at 251).

Here, non-exhaustion is not clear from the face of Plaintiff's complaint.  Accordingly, the Court must convert the current motion to one for summary judgment and look to extrinsic

evidence.  Before converting the motion, however, the Court must determine whether Plaintiff

has been given "unequivocal notice" of his obligation to submit evidentiary materials and an

opportunity to do so.  *See McCoy*, 255 F. Supp. 2d at 255.

The Court finds that Plaintiff has been given both notice and opportunity.  First,

Defendants moved to dismiss specifically on the ground of failure to exhaust and notified

Plaintiff that the Court might choose to treat the motion to dismiss as one for summary judgment,

and that to oppose it, he would need to submit evidence, such as affidavits.  Doc. 67 (Notice to

Pro Se Litigant); *see Kasiem*, 756 F. Supp. 2d at 575 (holding that formal notice of conversion

was not necessary where defendants attached as exhibits to their motion the records they had of

plaintiff's grievances and appeals and notified plaintiff that the court might treat the motion to

dismiss as one for summary judgment and that plaintiff must therefore submit evidence to

oppose the motion); *see also McCoy*, 255 F. Supp. 2d at 255-56 (holding that formal notice was

not necessary where defendants moved to dismiss specifically on the ground of exhaustion and

where plaintiff directly addressed exhaustion in his opposition papers and referred the court to

documentary evidence).   Additionally, in his opposition papers, Plaintiff directly addresses the

issue of exhaustion and refers the Court to documentary evidence, including a copy of Plaintiff's

hospital records and "Special Watch Log Book # S1533," attached to his brief as exhibits.  *See*

Doc. 80.  Accordingly, the Court finds that Plaintiff had "unequivocal notice" that the Court

might convert Defendants' motion to dismiss to one for summary judgment and that Plaintiff had

the opportunity to submit extrinsic materials pertinent to that issue.

### c.  Plaintiff did not Exhaust Administrative Remedies with Respect to his Claim of Deliberate Indifference to his Medical Needs

Defendants argue that Plaintiff has not exhausted administrative remedies with respect to

his claim of deliberate medical indifference because his grievance does not contain any allegations regarding Plaintiff's medical care; rather, Plaintiff's grievance only alleges that he was subjected to excessive force by several of the Defendants.  Accordingly, Defendants argue that Plaintiff's grievance failed to "'alert[] the prison to the nature of the wrong for which redress is sought,'" thereby failing to afford it "time and opportunity to address [his] complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Porter*, 534 U.S. at 524-25; *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

The Second Circuit has held that "a claim may be exhausted when it is closely associated with, but not explicitly mentioned in, an exhausted grievance, as long as the claim was specifically addressed in the prison's denial of the grievance and, hence, was properly investigated." *Percinthe v. Julien*, No. 08 Civ. 893 (SAS), 2009 WL 2223070, at *4, *4 n.9 (S.D.N.Y. July 24, 2009) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)  (holding that the plaintiff's claim for denial of medical care was exhausted by a grievance alleging excessive force and retaliation, explaining, "while Espinal's grievance ... does not explicitly discuss the misconduct by medical personnel which is alleged in the complaint, it is clear that the State considered these allegations when reviewing Espinal's grievance," because denial of medical care was addressed in the grievance's denial)).  Ultimately, the question for the Court is "whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond" that alleged against the individual or individuals specifically named in the grievance. *Id.*

Here, Plaintiff's grievance merely alleges that he was subjected to excessive force by

Defendants Surprenant, Rodriguez, Tillotson, Brothers, Krein, and Kowalchuk;[4] it does not allege that Defendants were deliberately indifferent to Plaintiff's medical needs. *See* Hale Decl., Ex. A. Indeed, the *only* reference in the grievance to Plaintiff's medical care is his allegation that on September 29, 2011, he was taken to Westchester Medical Center "for a cat scan for [his] left eye and a broken nose." *Id.* The Court also notes that Plaintiff's subsequent communications with prison officials regarding his grievance failed to mention any allegations of deliberate indifference to Plaintiff's medical needs. For example, in a December 26, 2011 letter to DOCCS' employee Teri Thomas, Plaintiff refers to his grievance as a "grievance of assault." *Id.* Similarly, in a January 14, 2012 letter to Karen Bellamy, Director of the IGP, regarding the status of his grievance, Plaintiff states that he "was assaulted in Green Haven Facility on 9/27/11" and makes no mention of Defendants' alleged denials of his requests for medical care. *Id.* Moreover, the Court's review of Plaintiff's grievance file indicates that the State did not investigate Plaintiff's allegation of deliberate indifference.[5] Indeed, the grievance file contains memoranda specifically regarding the alleged use of force by only those Defendants actually named in Plaintiff's grievance. Accordingly, the Court finds that Plaintiff's grievance did not "sufficiently alert[] prison officials that [Plaintiff] was alleging some wrongdoing beyond" the

---

[4] The grievance mistakenly refers to Defendants Krein, Kowalchuk and Surprenant as "Keran," "Wallchuck" and "Suprintnay," respectively.

[5] As Defendants mention in their motion papers, a September 27, 2011 memorandum from Defendant Surprenant to Defendant Lee regarding the incident states that "RN Miller reported to PSU to conduct the medical exam of inmate Hilbert in the cell. Swelling to his left eye and a small abrasion on the right arm was reported on the medical exam. All injuries were deemed minor in nature and the inmate remained in MH-OB-004 on the 1 to 1 watch." Hale Decl., Ex. A. Defendant Surprenant's reference to Plaintiff's medical examination and status immediately following the alleged excessive use of force does not suggest that the State investigated Plaintiff's claim of deliberate indifference. Moreover, Defendant Surprenant's description of Plaintiff's medical exam by Defendant Miller would not put the State on notice of any potential allegations regarding Defendants' alleged refusal of Plaintiff's requests for medical care. Additionally, Plaintiff's grievance file includes the medical report by Defendant Miller, dated September 27, 2011, describing the nature of Plaintiff's injuries. That report, however, also does not suggest that the State investigated or considered Plaintiff's claim of deliberate indifference; nor would the report have put the State on notice of such a claim.

9

allegation that he was subjected to excessive force by Defendants Surprenant, Kowalchuk, Brothers, Krein, Tillotson, and Rodriguez.

Moreover, the Court finds that none of the three exceptions to the exhaustion requirement articulated by the Second Circuit in *Hemphill*, 380 F.3d at 686, are applicable to Plaintiff's case. First, administrative remedies were clearly "available" to Plaintiff, as he filed a grievance at Marcy on December 8, 2011, which was subsequently investigated by the Inspector General's Office. Hale Decl., Ex. A. Second, Defendants have not forfeited the affirmative defense of non-exhaustion, nor are they estopped from asserting it. Estoppel is found where "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston v. Woodward*, No. 05 Civ. 3385 (RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (citations omitted). As such, the Second Circuit has held that a plaintiff's non-exhaustion may be excused on the grounds of estoppel where the plaintiff was misled, threatened or otherwise deterred from fulfilling the requisite procedures. *Id.* (citing *Hemphill*, 380 F.3d at 688-89; *Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d Cir. 2004)). Here, Plaintiff does not allege that Defendants improperly deterred him from filing a grievance regarding the alleged deliberate indifference, and the record does not evidence the existence of any such threats or misconduct on the part of Defendants.

With respect to the third exception, the Second Circuit has held that "there are certain 'special circumstances,'" such as a reasonable misunderstanding of grievance procedures, "in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Hemphill*, 380 F.3d at 689 (citations omitted). While Plaintiff does not specifically

allege any "special circumstances" justifying his failure to exhaust administrative remedies, he states in his opposition papers that he "was told that his grievance was untimely" when he attempted to file it at Marcy, and that he believed he had "taken all the proper steps" by filing a complaint "with risk management at CNYPC [Central New York Psychiatric Center] for the excessive force claim and medical negligence." Pl.'s Affirmation in Support of Motion (Doc. 78); *see also* Pl.'s Mem. L. Opp. 6 (stating that Plaintiff filed a complaint concerning his "medical issues" with the risk management office at CNYPC on October 14, 2011). In light of its obligation to interpret Plaintiff's submissions as raising the strongest arguments that they suggest, *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006), the Court will treat Plaintiff's argument regarding his failure to exhaust administrative remedies as a request to excuse his non-exhaustion under the third *Hemphill* exception.

A review of the grievance file indicates that Plaintiff remained at Green Haven until October 13, 2011, where he was in a psychiatric observation cell in the Mental Health Unit and did not have access to any writing tools. Hale Decl., Ex. A. Plaintiff was then transferred to CNYPC, where he claims to have filed a complaint with "risk management." *Id.* After Plaintiff returned to Marcy on December 8, 2011, his grievance regarding the September 27, 2011 assault was rejected as untimely. *Id.* However, after prison officials confirmed that Plaintiff did not have access to the grievance process while at Green Haven and determined that he had shown "mitigating circumstances," Plaintiff's grievance was filed at Marcy on January 27, 2012. *Id.* Accordingly, the record indicates that despite initially being informed that his grievance was untimely, Plaintiff was ultimately permitted to file his grievance upon his return to Marcy.

Moreover, to the extent that Plaintiff argues that his attempt to file a complaint while at CNYPC constitutes a "special circumstance" justifying his failure to exhaust administrative

11

remedies, the Court disagrees.  First, Plaintiff failed to provide the Court with a copy of the complaint that he allegedly filed at CNYPC, and the declaration of Jeffery Hale, Assistant Director of the IGP for DOCCS, states that after conducting a "diligent search for grievances and appeals filed by [Plaintiff] based on grievances filed at the facility level," Mr. Hale determined that Plaintiff "did not file a grievance alleging that defendants were deliberately indifferent to his medical needs while at Green Haven in September 2011."  Hale Decl. ¶ 10.  Plaintiff's unsupported allegation that he filed a grievance at CNYPC is insufficient to withstand a motion for summary judgment.  *See Santiago v. Murphy*, No. 08 Civ. 1961 (SLT), 2010 WL 2680018, at *2-*3 (E.D.N.Y. June 30, 2010) (dismissing complaint where declarations submitted by defendant stated that there was "no record of any grievance" for the alleged incident and holding that plaintiff's unsupported allegation that he filed a grievance is insufficient to withstand a motion for summary judgment).  Second, even assuming that Plaintiff did file a complaint with the risk management office at CNYPC, that complaint was clearly not exhausted.  The IGP requires that inmates file grievances "with an IGP clerk."  7 NYCRR § 701.2(a); *see also id.* §§ 701.4(g), 701.5.  Accordingly, Plaintiff's complaint to the risk management office was not properly filed.  Additionally, Plaintiff does not assert that he appealed from the denial of that grievance, nor is there any record of such appeal.  *Santiago*, 2010 WL 2680018, at *3.  Finally, even if at the time of allegedly filing his complaint at CNYPC Plaintiff misunderstood the grievance procedure, his failure to exhaust administrative remedies would still not be justified. Upon his return to Marcy, Plaintiff clearly had an understanding of the grievance procedure sufficient enough to allow him to properly file a grievance regarding the excessive force allegation in accordance with the IGP.  Plaintiff has provided the Court with no explanation to justify his failure to include in that grievance the allegation regarding Defendants' alleged

deliberate indifference to his medical needs.  Accordingly, as the record establishes that Plaintiff

is aware of and has shown that he is capable of following the correct grievance procedure, the

Court finds that he has failed to demonstrate the existence of "special circumstances" sufficient

to excuse his non-exhaustion.[6]  *See Kasiem*, 756 F. Supp. 2d at 577-78 (holding that the plaintiff

failed to demonstrate the existence of "special circumstances" justifying his non-exhaustion

where he had previously shown that he was capable of following the correct grievance

procedure).

The Court therefore finds that Plaintiff has failed to exhaust administrative remedies with

respect to his deliberate medical indifference claim and that none of the three exceptions to the

exhaustion requirement apply.  Where a claim is dismissed for failure to exhaust administrative

remedies, dismissal without prejudice is appropriate if the time permitted for pursuing

administrative remedies has not expired.  *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

Prisoners have 21 days from the date of the alleged occurrence to initiate the first formal step of

the IGP, subject to exceptions "based on mitigating circumstances."  7 NYCRR §§ 701.5(a)(1),

701.6(g)(1)(i)(a).  However, an exception to the time limit may not be granted if the request is

made more than 45 days after the alleged occurrence.  7 NYCRR § 701.6(g)(1)(i)(a).

Accordingly, because the time to both file a grievance and request an exception to the time limit

has long expired, and because Plaintiff has not offered any reason for his delay in filing a

grievance with respect to his deliberate indifference claim, the claim is dismissed with

---

[6] The Court notes that the exhibits attached to Plaintiffs' opposition papers, which include a copy of Plaintiff's hospital records and "Special Watch Log Book # S1533," do not compel a different outcome, as they do not go to the issue of exhaustion.

prejudice.[7]  *See Santiago*, 2010 WL 2680018, at *3 (dismissing complaint with prejudice

because "[a]ny grievance or appeal would now be untimely under 7 NYCRR § 701.5, and the

time limit for seeking an exception to the time limitations under 7 NYCRR § 701.6 has also

passed"); *see also Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 240 (W.D.N.Y. 2010)

(dismissing complaint with prejudice where the time limits for plaintiff to file an administrative

appeal had long since passed and plaintiff did not allege "any facts excusing his failure to

exhaust").

### d.  Fischer and Lee are Dismissed as Defendants

Defendants move in the alternative to dismiss the Amended Complaint against

Defendants Fischer and Lee.  Plaintiff's sole allegation with respect to these Defendants relates

exclusively to his deliberate medical indifference claim.  *See* Am. Compl. ¶ 5.  Accordingly,

because the Court finds that Plaintiff has failed to exhaust administrative remedies with respect

to his deliberate indifference claim, Defendants' motion to dismiss with respect to Defendants

Fischer and Lee is granted.

Moreover, to the extent that Plaintiff seeks to hold Defendants Fischer and Lee liable for

his excessive force claim, that claim is also dismissed against them.  Case law is clear that

supervisors may not be held vicariously liable for their subordinates' violations.  *See Rahman v.

Fisher*, 607 F. Supp. 2d 580, 584-85 (S.D.N.Y. 2009).  It is therefore "well settled" that

"personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983."  *Id.* at 585 (citation omitted).  Neither the factual allegations

contained in the Amended Complaint nor the grievance file submitted by Defendants indicate

---

[7] The Supreme Court has held that the PLRA does not require dismissal of an entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint.  *Jones*, 549 U.S. at 223-24.  Accordingly, although the Court finds that Plaintiff's deliberate indifference claim should be dismissed for non-exhaustion, his remaining exhausted claims may proceed.

that Defendants Fischer or Lee were "personally involved" in the alleged violation, either by directly participating in it or by failing to stop it.  Although a review of Plaintiff's grievance file indicates that Defendant Lee received a memorandum from Defendant Surprenant regarding the alleged excessive use of force, case law is clear that "[a]fter the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation."  *Id.*

## III.  Conclusion

For the reasons set forth above, Defendants' partial motion to dismiss is GRANTED. Accordingly, Plaintiff's First Cause of Action for Deliberate Indifference to an Inmate's Medical Needs in Violation of the Eighth and Fourteenth Amendments is DISMISSED with prejudice.[8] The only remaining claims are those for unnecessary and excessive use of force in violation of the Eighth Amendment; violations of the Americans with Disabilities Act; and violations of the Rehabilitation Act.  The only remaining Defendants in this action are Surprenant, Tillitson, Brothers, Krein, Kowalchuk, and Rodriguez.

The Clerk of the Court is respectfully directed to terminate the motions.  Docs. 65, 77. The parties are directed to appear for a status conference on October 2, 2013 at 9:30 am.

It is SO ORDERED.

Dated: September 4, 2013
New York, New York

Edgardo Ramos, U.S.D.J.

---

[8] Although Defendants Santoro, Krein and Rodriguez did not join in Defendants' partial motion to dismiss, because the Court finds that Plaintiff failed to exhaust administrative remedies with respect to his deliberate medical indifference claim, that claim is dismissed  as to those Defendants as well.